UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MORRIS D. DAVIS, )<br>  )<br>    Plaintiff, )<br>  )<br>  v. )<br>  )<br>JAMES H. BILLINGTON, in his official )<br>capacity as the Librarian of Congress, and )<br>DANIEL P. MULHOLLAN, in his individual )<br>capacity, )<br>  )<br>    Defendants. )<br>  ) | Civil Action No. 10-0036 (RBW) |

## ORDER

This matter came before the Court on January 19, 2010, for a hearing on the plaintiff's motion for a preliminary injunction to prevent the Congressional Research Service, a service unit of the Library of Congress, from terminating his employment. Plaintiff's Motion for a Temporary Retraining Order or, in the Alternative, a Preliminary Injunction; see also Memorandum of Points and Authorities in Support of Plaintiff's Motion for a Temporary Restraining Order or, in the Alternative, a Preliminary Injunction ("Pl.'s Mem."). The defendants opposed the motion. Defendants' Opposition to Plaintiff's Motion for a Temporary Restraining Order or, in the Alternative, a Preliminary Injunction ("Defs.' Opp'n").[1] Upon consideration of the plaintiff's motion, the defendants' opposition, the applicable legal authority, and the oral arguments

---

[1] In resolving this motion, the Court also considered the Plaintiff's Reply in Support of Plaintiff's Motion for a Temporary Restraining Order or, in the Alternative, a Preliminary Injunction.
  Also pending before the Court is the Plaintiff's Motion for Leave to File a Supplemental Declaration in Support of Plaintiff's Motion for a Temporary Restraining Order or, in the Alternative, a Preliminary Injunction. No opposition had yet been filed at the time of the Court's consideration of the plaintiff's motion for injunctive relief, and therefore, the Court finds good cause to grant this motion and consider the additional declaration of the plaintiff.

presented by the parties, the Court finds that the plaintiff has not met his burden to show that the extraordinary remedy of a preliminary injunction is warranted.

Temporary restraining orders and preliminary injunctions are "extraordinary remed[ies] that should be granted only when the party seeking the relief, by a clear showing, carries the burden of persuasion." Chaplaincy of Full Gospel Churches v. England, 454 F.3d 290, 297 (D.C. Cir. 2006) (internal quotation marks and citation omitted).  To obtain emergency injunctive relief, the moving party must establish: (1) a substantial likelihood of success on the merits, (2) that it would suffer irreparable injury if the injunction were not granted, (3) that an injunction would not substantially injure other interested parties, and (4) that the public interest would be furthered by the injunction.  Id. at 297.  While a particularly strong showing in one if these four areas might warrant injunctive relief despite weak showings in other areas, a movant must "demonstrate that irreparable injury is likely in the absence of an injunction," not just a "possibility" of such injury.  Winter v. Nat. Res. Def. Council, __ U.S. __, __, 129 S. Ct. 365, 375 (2008) (emphasis omitted).  And a movant's failure to show irreparable harm thus represents grounds for refusing to issue a preliminary injunction, even if the other three factors favor him.  Id.; Chaplaincy of Full Gospel Churches, 454 F.3d at 297 (citation omitted).

The Court is satisfied that the plaintiff has established, at least based on the record before the Court at this time, that the likelihood of success on the merits and public policy prongs of the preliminary injunction standard weigh in his favor.  Essentially, the record before the Court suggests that the plaintiff was terminated immediately after two specific opinion editorials he authored were published in national newspapers.  Pl.'s

Mem., Ex. L (Nov. 13, 2009 Memorandum of Admonishment), Ex. M (Nov. 20, 2009 Termination Letter). Regardless of the defendants' contention to the contrary, Defs.' Opp'n at 26, it appears that the content of the plaintiff's published opinions was one of the reasons, if not the primary reason, he was fired, i.e., because the plaintiff took a position on the prosecution of detainees being housed at the United States military's Guantánamo Bay facility which the Congressional Research Service felt would call into question its impartially as to any policy recommendation it would make and any research it would conduct on that issue. This conclusion is supported by the fact that the opinion articles were specifically referenced in the plaintiff's termination letter, and also the timing of the letter, which was issued only several days after his writings were published. Id. at Ex. M (Nov. 20, 2009 Termination Letter) at 1. The plaintiff's likelihood of success position therefore is well-founded, at least with respect to the record the Court now has before it. And as to the public interest prong, it cannot be questioned that government employees retain First Amendment rights, Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205, Will County, 391 U.S. 563, 574 (1968), even though the speech of higher level government employees can be curtailed without implicating a First Amendment violation, Hall v. Ford, 856 F.2d 255, 261, 263-65 (D.C. Cir. 1988).

     As to the balance of the harms factor, this prong seems to be in equipoise. On the one hand, it would seem that the working relationship between the plaintiff and his immediate supervisor has been fractured by the publication of the plaintiff's opinion articles and that this could compromise the mission of the Congressional Research Service. While this factor alone cannot dissuade the Court from compelling the Congressional Research Service to return the plaintiff to his prior position and retain him

as an employee pending resolution of this case, on the other hand, the harm the plaintiff will sustain if he is not permitted to remain in his prior position pending a final resolution on this case does not seen sufficiently compelling to tip this factor in his favor.

Therefore, whether the plaintiff is entitled to the injunction he seeks turns on whether he has established the requisite irreparable harm necessary to receive the extraordinary relief of an injunction.  The defendants naturally claim that the plaintiff has not met his burden, Defs.' Opp'n at 18, while the plaintiff contends that he has sustained his burden because if the Congressional Research Service is not required to reinstate and retain him as its Assistant Director of Foreign Affairs, Defense and Trade Division, and should he ultimately prevail on his constitutional claims, his pursuit of monetary remedies could be forever foreclosed, thus precluding him from recovering the back pay he would otherwise have received had he not been unlawfully terminated.  Pl.'s Mem. at 40.  That loss, the plaintiff contends, combined with the fact that the alleged unconstitutional policy continues in force, establishes irreparable harm.  Id. at 41.  Alternatively, the plaintiff asks the Court to enjoin the Library of Congress from selecting a replacement for the position until this case is resolved on the merits.

First, as to the plaintiff's continuing enforcement point – that the defendants' ongoing enforcement of the Congressional Research Service policy "has already stopped [him] from taking advantage of numerous opportunities to publicly express his views on this administration's military commissions policy," id. at 41 – the reality is that the restrictions about which he complains will remain in effect while this case is litigated.  Thus, the plaintiff's ability to express his views will only be unencumbered if he is freed from those policies pending the resolution of this case on the merits.  In any event, the

4

resolution of this prong does not turn on this aspect of the plaintiff's irreparable injury argument.

The Court will therefore turn to the plaintiff's main argument on the question of irreparable harm – that monetary relief will be foreclosed to him by the United States Supreme Court's decision in United States v. Fausto, 484 U.S. 439 (1988). The defendants represented to the Court at the January 19, 2010 hearing that the plaintiff's reading of this case is incorrect. Defs.' Opp'n at 24. As neither party has convincingly established that the plaintiff's claims are, or are not, precluded by the Civil Service Reform Act of 1978, Pub. L. 95-454, 92 Stat. 1111 ("CSRA")[2] – in fact, the Court did not construe the defendants' position in its opposition filing or as represented orally to the Court that the plaintiff's claims should be governed by the CSRA, thus depriving the Court of subject-matter jurisdiction – the Court will also not reach this conclusion. And, neither party seems to dispute that the plaintiff has no meaningful opportunity to pursue any administrative remedies based on his allegations. Therefore, where the CSRA is not implicated, neither is the logic of Fausto. Worthington v. United States, 168 F.3d 24, 26-27 (Fed. Cir. 1999) ("The CSRA, by its terms, however, does not encompass every adverse personnel action against a federal employee. . . . Thus, because [the plaintiff's] claim is not within the coverage of the CSRA and because it otherwise falls within the jurisdictional grant of the Tucker Act, the Court of Federal Claims has jurisdiction to adjudicate this dispute."); Bosco v. United States, 931 F.2d 879, 883 (Fed. Cir. 1991) ("The Supreme Court did not rule that the CSRA provided the only means of judicial review of any actions affecting federal employees, but rather that it was the only means

---

[2] The CSRA has been codified at 5 U.S.C. §§ 1201-06, 2101a, 2301-05, 3111, 3112, 3131-36, 3327, 3391-97, 3591-94, 3596, 4311-15, 4507, 4701-06, 5361-66, 5381-85, 5752, 7101-06, 7111-23, 7131-35, 7211, 7501-04, 7511-14, 7521, 7541-43, 7702, 7703 (2006).

of review as to the types of adverse personnel action specifically <u>covered</u> by the CSRA . . . ."); <u>cf.</u> <u>Graham v. Ashcroft</u>, 358 F.3d 931, 934 (D.C. Cir. 2004) (discussing the "explicit assumption in <u>Fausto</u>" that the case arose from "a personnel action as to which the CSRA grants no right of review, even for employees who are otherwise granted such rights under the CSRA in other circumstances"). Indeed, there is "no reason for disabling [the plaintiff] from pursuing in federal court a constitutional claim that under First Amendment principles is as final, ripe and free from exhaustion difficulties as it need be, . . . [where ]he has standing to pursue, merely because []he has also experienced a personnel action related to that claim." <u>Weaver v. U.S. Info. Agency</u>, 87 F.3d 1429, 1434 (D.C. Cir. 1996); <u>accord</u> <u>Am. Fed'n of Gov't Employees Local 1 v. Stone</u>, 502 F.3d 1027, 1037 (9th Cir. 2007) (Where a party "has no remedies available under the CSRA . . . judicial review [may be] the only means by which he can attempt to vindicate his constitutional rights."). Indeed, a "'serious constitutional question' . . . would arise if [the CRSA] were construed to deny any judicial forum for [the plaintiff's] colorable constitutional claim." <u>Webster v. Doe</u>, 486 U.S. 592, 603 (1988) (citation omitted). Simply, the fact that a personnel action is the basis alleged by the plaintiff as the means by which his First Amendment right was deprived does not somehow foreclose him from pursing judicial relief for that alleged constitutional deprivation.

      This availability of judicial recourse, however, does not resolve the issue of whether the plaintiff will be deprived of a monetary remedy. It must be remembered that the burden of establishing entitlement to the extraordinary relief that the plaintiff seeks rests with him, and he has only speculated that such relief may be unavailable to him. Pl.'s Mem. at 40. True, the plaintiff is correct that he may not be able to maintain a

Bivens action to challenge the defendants' alleged constitutional transgressions. Pl.'s Mem. at 40; see Bush v. Lucas, 462 U.S. 367, 388-90 (1983); cf. Bivens v. Six Unknown Agents of Fed. Bureau of Narcotics, 403 U.S. 388, 396 (1971). Moreover, the plaintiff may not be able to recover anything other than equitable relief if he ultimately prevails on the merits in this lawsuit. Cf. Spagnola v. Mathis, 859 F.2d 223, 230 (1988) (indicating that civil servants always have the right "to seek equitable relief against their supervisors, and the agency itself, [as] vindication [for violations] of their constitutional rights" even if other remedies are unavailable). But, the plaintiff has not made a sufficient showing that either is in fact the case.

Regardless, the Court will face the question of what is the appropriate relief due to the plaintiff when and if that question arises.[3] The plaintiff has chosen only to pursue his constitutional claims in this action. He is therefore limited to receiving only the remedies that those claims provide, and he cannot use a request for emergency injunctive relief to bypass any restrictions on the damages otherwise available to him for alleged constitutional violations.

Moreover, while the Court appreciates that the plaintiff's loss of employment income may temporarily be difficult for him, he also bears the burden of showing that the economic harm he will incur will be irreparable. And on the record currently before the Court, the plaintiff has failed to establish that level of economic hardship, given that he is a lawyer, he contends to be a renowned expert in his field, possesses special knowledge

---

[3] In fact, the Court is also not prepared at this time to find that the plaintiff's entitlement to back pay would be foreclosed were he successful on his claims. The District of Columbia Circuit has awarded reinstatement and back pay where a plaintiff was discharged in violation of the First Amendment, Am. Postal Workers Union, AFL-CIO v. U.S. Postal Serv., 830 F.2d 294, 312 (D.C. Cir. 1987), and although that decision was rendered pre-Fausto, the CSRA was in effect when that decision was rendered and the Court is, at this juncture, without the aid of the parties' positions as to what effect Fausto has on that decision.

and skills on matters of public importance, and has an impressive work experience. With this background, the Court presumes that the plaintiff can secure other employment, even in the current economic environment. In addition, the plaintiff is a retired Air Force Colonel, Complaint ("Compl.") ¶ 15, and presumably is receiving considerable retirement benefits due to his rank and twenty-five years of military service, Compl. ¶ 12. Therefore, even if the Court presumes, based on the evidence before it, that the plaintiff has satisfied the likelihood of success, balance of the harms, and the public interest prongs of the preliminary injunction standard, he has failed to satisfy the irreparable injury prong. Accordingly, it is hereby

**ORDERED** that the plaintiff's motion seeking to file a supplemental declaration is **GRANTED**; it is further

**ORDERED** that the plaintiff's motion seeking a preliminary injunction is **DENIED**.

**SO ORDERED** this 20th day of January, 2010.

_____/s/_____
REGGIE B. WALTON
United States District Judge