UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MORRIS D. DAVIS,

        Plaintiff,

       v.                                Civil Action No. 1:10-cv-00036-RBW

JAMES BILLINGTON, in his official
capacity as the Librarian of Congress,

        Defendant.

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION
FOR SANCTIONS FOR PLAINTIFF'S DELIBERATE SPOLIATION
<u>OF MATERIAL EVIDENCE</u>**

Dated: January 9, 2013                   Respectfully submitted,

                                    STUART F. DELERY
                                    Principal Deputy Assistant Attorney General

                                    RONALD C. MACHEN, JR.
                                    United States Attorney

                                    JENNIFER D. RICKETTS
                                    Branch Director

                                    SUSAN K. RUDY
                                    Assistant Branch Director

                                * /s/ Christopher R. Hall*
                                    CHRISTOPHER R. HALL
                                    JOSEPH W. MEAD (MI Bar P71528)
                                    U.S. Department of Justice
                                    Civil Division
                                    Federal Programs Branch
                                    P.O. Box 883
                                    Washington, D.C.  20530
                                    (202) 514-4778

                                    Attorneys for Defendant

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................................... 1

ARGUMENT ......................................................................................................................... 5

I.   PLAINTIFF WILLFULLY SPOLIATED MATERIAL EVIDENCE. .................................................... 5

    A.   PLAINTIFF'S OPPOSITION FAILS TO RESPOND TO CRITICAL POINTS
        AS TO THE CULPABILITY OF HIS DELIBERATE AND COMPREHENSIVE
        DELETIONS OF GOVERNMENT INFORMATION  ............................................................... 5

    B.   PLAINTIFF'S ARGUMENTS THAT HIS ADMITTEDLY DELIBERATE CONDUCT
        DOES NOT CONSTITUTE SPOLIATION ARE UNSPERSUASIVE. ...................................... 17

II.  REMEDIAL AND PUNITIVE SANCTIONS ARE WARRANTED ON THE BASIS
    OF PLAINTIFF'S CULPABILITY AND THE PREJUDICIAL EFFECTS
    OF HIS WILLFUL CONDUCT. ............................................................................................ 21

    A.   PLAINTIFF'S WILLFUL CONDUCT WARRANTS DISMISSAL  ........................................ 21

    B.   ALTERNATIVELY, PRECLUSION AND ADVERSE INFERENCE SANCTIONS
        ARE WARRANTED. ...................................................................................................... 23

    C.   MONETARY SANCTIONS ARE WARRANTED ............................................................... 24

CONCLUSION ...................................................................................................................... 25

## <u>INTRODUCTION</u>

The undisputed facts of this matter need no embellishment.  Over a two-minute period on January 20, 2010 – twelve days after he filed this wrongful-separation lawsuit against the Library of Congress and the final day of his employment with the Congressional Research Service, a unit within the Library – Plaintiff intentionally deleted roughly 3,400 files from his CRS computer hard drive.  The roughly 3,400 deleted files constituted all but one of the hard drive files to which Plaintiff had user access, and joined the 134 other files that he had previously deleted since December 1, 2009, well after it had become apparent to him that he would initiate this lawsuit.  The intentionally deleted files included four 2009 e-mail exchanges, all initiated by Plaintiff using his official CRS e-mail and bearing his electronic signature as Assistant Director for the Foreign Affairs, Defense, and Trade Division ("FDT") at CRS, that unequivocally contradict his oft-made factual assertion to this Court, and to the Court of Appeals, that his duties as Assistant Director for FDT had nothing to do with military commissions or military detainees – an assertion crucial to his theory of the case.  Of particular note, in one such e-mail, Plaintiff stated that because of CRS's "commitment to provide Congress non-partisan and objective analysis, I have refrained from speaking publicly about detainee issues.  I do, however, get to help focus the debate to some extent from inside the legislative process in my role as head of the Foreign Affairs, Defense, and Trade Division at CRS."

On the basis of its own forensic analysis and Plaintiff's admission that he intentionally deleted those files when confronted by conclusive evidence of his actions – and after efforts to resolve this matter short of litigation were exhausted without success – the Government moved to dismiss Plaintiff's claims for his willful spoliation of material evidence.  The Government moved in the alternative for preclusion and adverse inference sanctions, and sought recovery of its fees, expenses, and costs in seeking relief and (ultimately) attempting to undo or mitigate the

effects of Plaintiff's actions through the expensive and uncertain prospect of forensic reconstruction of the deleted government hard drive.

Plaintiff's opposition is striking chiefly for what it utterly fails to reckon with. It essentially avoids addressing the many indicia of just how egregious his willful conduct was. Thus, it fails to provide any substantive response to the four specific e-mails that put the lie to Plaintiff's repeated representations that he had nothing to do with military commissions or detainee issues, thereby bolstering the inference that Plaintiff's admittedly intentional deletions were executed willfully and in bad faith for the purpose of destroying, concealing, or limiting access to evidence. It fails even to acknowledge the significance of Plaintiff's timing in intentionally deleting virtually the entire substantive contents of his government hard drive, instead arguing unconvincingly that Plaintiff was following his "business-as-usual" practice of "cleaning up" his hard drive upon transitioning out of a government position – without even considering that his own initiation of litigation against his soon-to-be-former employer must supersede that (incorrect) customary practice. And it fails even to try to grapple with the damning evidence of Plaintiff's decision to leave behind, as the only remaining file on his government hard drive, a JPEG image file of the Bill of Rights – an unequivocal message seemingly intended by Plaintiff to thumb his nose at the Library in connection with his claims asserted under the First and Fifth Amendments, should that image ultimately be found on Plaintiff's deleted government hard drive.

Even more importantly, Plaintiff fails to address the uniquely egregious circumstances of this case that warrant the fullest range of spoliation sanctions, including dismissal, regardless of whether the deleted files ultimately may be restored in full (at considerable expense). Here, unlike the vast majority of spoliation cases, Plaintiff did not just delete his own files after it became apparent that litigation would ensue. Rather, he misused his access to his opposing

party's files to willfully erase those files entirely from that party's possession, copy some of them into his own, and steal them.  This case is fundamentally akin to a litigant breaking into the file rooms of his opposing party, stealing their files relevant to the litigation, distributing them to his private litigation counsel and others – thereby circumventing any proper administration of justice and rule of discovery and trampling upon any privileges the other party may possess – and finally, when caught, telling the Court "no harm, no foul," in part by producing copies of (some of) the stolen files back to their rightful owner and custodian.

Plaintiff's culpability by itself warrants the most serious sanction, but even if a showing of prejudice is deemed necessary, here the prejudice is self-evident.  Not only may certain government files be permanently lost – given Plaintiff's unilateral decision that some were not worth duplicating and his cavalier handling of the remainder – but far more importantly, Plaintiff has thumbed his nose not just at his opposing party in litigation but at the integrity of the judicial process as a whole.  That prejudice is further aggravated when the information stolen constitutes government information likely subject to constitutional and statutory protections.  In that regard, this bell cannot be unrung: Plaintiff, his counsel, and others have been made privy to misappropriated government files to which they never should have had access, and to which they would not have had access had they abided by basic and clear rules of conduct.  Without the strongest sanction here, the Court would send a message that it is perfectly OK for separated employees to erase and steal the Government's information on their way out the door, then use that stolen information to attempt to gain an unfair advantage in litigation.

Instead of attempting to address the ramifications of his willful conduct head on, Plaintiff makes arguments most notable for their pervasive audacity.  He attempts unpersuasively to spin Plaintiff's otherwise uncontested misappropriation of government files as a haphazard "preservation" measure – albeit a fundamentally ineffective measure given that (i) Plaintiff

unilaterally determined that an unspecified number of intentionally deleted files were "not worth" copying to his personal thumb drive, thereby destroying those files absent uncertain forensic reconstruction, and (ii) Plaintiff has already somehow "lost" at least eighty-six files from the thumb drive, and was forced to scavenge further copies of those lost copies from a back-up portable hard drive where such files are commingled with numerous other categories of electronic information.   It attempts to shift the blame for Plaintiff's admittedly intentional deletion of the entire substance of his government hard drive from him to the Library, arguing illogically that the Library somehow should have prevented his deliberate conduct – a strategy that resonates with particular discordance given Plaintiff's almost three decades of experience as a licensed attorney, a retired Air Force Judge Advocate General, and a former criminal prosecutor.   And, finally, it suggests that the litigation preservation decision as to which government files reposited on a government hard drive should be "preserved" and which should be permanently deleted as not relevant to a pending litigation is somehow within the unilateral and exclusive province of a soon-to-be-former-employee litigant to make as he is walking out the door.

None of those particularly audacious arguments carries water here.   Nor do Plaintiff's arguments that he has not in fact spoliated material evidence because he ostensibly "preserved" some of that evidence (but not all of it) on his personal thumb drive, or that sanctions are unwarranted because there is a lack of severe prejudice to Defendant.   At core, this matter is about Plaintiff's intentional misconduct, both in deliberately deleting an entire government hard drive's worth of substantive files immediately prior to and after he initiated litigation against his government employer, and in misappropriating the copies of some of those deleted government materials for his own ends.   Contrary to Plaintiff's suggestions, that deliberate course of conduct very much constitutes intentional spoliation, and remedial and punitive sanctions are warranted

by virtue of the culpability of his actions as well as ongoing prejudice to Defendant, and to the Government as a whole, that continues to play out.

## ARGUMENT

Plaintiff's intentional deletion of all but a single file to which he had user access on his government computer hard drive, twelve days after he initiated this wrongful separation suit against the Library of Congress, constitutes willful spoliation.  That deliberate conduct, augmented by Plaintiff's unilateral, calculated, and improper decision to walk away from CRS with copies of most (but not all) of the deleted files, warrants severe sanctions for both remedial and punitive reasons.  Plaintiff offers no persuasive argument to the contrary.

## I.    PLAINTIFF WILLFULLY SPOLIATED MATERIAL EVIDENCE.

Plaintiff's opposition fails to respond to critical points set forth in the Government's opening brief, and the arguments he raises where he does choose to respond do not rebut the largely undisputed facts that establish willful spoliation.

### A.    PLAINTIFF'S OPPOSITION FAILS TO RESPOND TO CRITICAL POINTS AS TO THE CULPABILITY OF HIS DELIBERATE AND COMPREHENSIVE DELETIONS OF GOVERNMENT INFORMATION.

Plaintiff's culpability in intentionally deleting virtually the entire substance of his government hard drive after he had initiated this litigation is largely outcome-determinative here.  See, e.g., Victor Stanley, Inc. v. Creative Pipe, Inc., 269 F.R.D. 497, 533 (D. Md. 2010) ("The harshest sanctions may apply not only when both severe prejudice and bad faith are present, but also when, for example, culpability is minimally present, if there is a considerable showing of prejudice, or, alternatively, the prejudice is minimal but the culpability is great[.]").  Yet on that score, three dispositive points set forth in detail in the Government's opening brief – (i) the relevance of specific deleted e-mails; (ii) the timing of Plaintiff's deletions; and (iii) the symbolic message communicated by the sole file Plaintiff left on the government hard drive after his purge

– yield no response from Plaintiff in his opposition.  In fact, Plaintiff mostly fails to acknowledge them at all.  Plaintiff's failure to acknowledge those points, much less provide something by way of substantive response, is a telling omission – one that underscores the conclusion that Plaintiff committed intentional spoliation, and that severe sanctions are therefore warranted.

**Plaintiff's 2009 CRS E-Mails Asserting Ownership as to Military Commission and Detainee Issues.**  First, among the more than 3,500 files that Plaintiff deliberately deleted from his government hard drive were at least four e-mail exchanges initiated by Plaintiff that directly controvert the factual linchpin of his case as he has constructed it – the assertion, repeated throughout this litigation, that neither he nor his position as Assistant Director for Foreign Affairs, Defense, and Trade had anything to do with military commission or detainee issues.  Gov't Mem. at 1-2, 7-11, 16-19.  Among those e-mail exchanges was a June 9, 2009 e-mail to Elisa Massimino of Human Rights First in which Plaintiff acknowledged his obligation to "refrain[] from speaking publicly about detainee issues[]" because of CRS's "commitment to provide Congress non-partisan and objective analysis," but emphasized that "I do, however, get to focus the debate to some extent from inside the legislative process in my role as head of the Foreign Affairs, Defense and Trade Division of CRS."   ECF No. 63-2.   Separate e-mail exchanges initiated by Plaintiff with staff members of the Senate Judiciary and Armed Services committees similarly demonstrate Plaintiff's eagerness in 2009 to take ownership of military commission and detainee issues as to which he later aggressively disclaimed ownership, under oath and through signed filings, when it suited his theory of the case in litigation.  See ECF No. 63-7 (e-mail exchange with Senate Judiciary Committee staff members); ECF No. 63-8 (e-mail exchange with Senate Armed Services Committee staff member).  All of these e-mail exchanges were initiated by Plaintiff, using his CRS e-mail account and his official CRS signature block.

See ECF Nos. 63-2, 63-7, 63-8.  And each of these e-mails was part of Plaintiff's hard drive purge of January 20, 2010.

Yet nowhere in the text of Plaintiff's opposition does he so much as acknowledge these e-mails.  Whatever Plaintiff's rationale for so assiduously avoiding any substantive response to the specific deleted e-mails and their implications for the merits of his case, the upshot is that Plaintiff forfeited any chance to try to convince the Court that they are not material to the central factual assertion of his case.  "In the context of spoliation, lost or destroyed evidence is 'relevant' if 'a reasonable trier of fact could conclude that the lost evidence would have supported the claims or defenses of the party that sought it."  Victor Stanley, 269 F.R.D. at 531. Given the centrality of Plaintiff's oft-repeated assertion that he had nothing to do with military commission or detainee issues to his theory of the case, it is apparent that these specific deleted e-mails would at a minimum support the Library's defense to Plaintiff's First Amendment and Due Process claims.  Plaintiff has chosen to remain silent on that point in spite of the Government's comprehensive discussion of it in its opening brief.

Plaintiff's only mention of this major point is a footnote that repeats in conclusory fashion the now demonstrably false assertion that "he had no official responsibility for military commissions issues, regardless of how the Library wants to characterize his statements[,]" and suggests that the substance of these deleted e-mails is irrelevant to the charge of intentional spoliation.  Pl.'s Opp. Mem. at 22, n.9.  Plaintiff's footnote-relegated argument is wrong on both counts.  As to the merits, it is difficult to picture the unidentified "plethora of corroborating evidence" to which Plaintiff alludes that would conceivably trump his own words, in pre-litigation e-mails signed using his official CRS signature block, taking ownership as to "military commissions issues."  Certainly that is the case when reading Plaintiff's June 9, 2009, email to Elisa Massimino, in which he asserts that "I do, however, get to focus the debate to some extent

from inside the legislative process in my role as head of the Foreign Affairs, Defense and Trade

Division at CRS."  ECF No. 63-2.  It is likewise the case when reading Plaintiff's e-mail of the

same date to George Toscas of the Department of Justice, taking similar ownership of detainee

issues and even characterizing the American Law Division within CRS as taking a somewhat

secondary role to FDT on handling those issues vis-à-vis Congress.  ECF No. 63-9.[1]  The same

holds as to Plaintiff's e-mails to members of the Senate Judiciary and Armed Services

committees.  ECF Nos. 63-7, 63-8.

As to the charge of intentional spoliation, the clear relevance of the specific deleted e-

mails to Plaintiff's claims and the Library's defenses to those claims underscores that Plaintiff's

deliberate actions in purging his government hard drive amounted to both willfulness and bad

faith.  As the court explained in Victor Stanley:

> Willfulness is equivalent to intentional, purposeful, or deliberate conduct.  In
> [Goodman v. Praxair Services, Inc., 632 F. Supp. 2d 494, 523 (D. Md. 2009)], this
> Court held that the defendant "willfully destroyed evidence that it knew to be
> relevant" because its chief executive officer deleted her e-mails, and the defendant
> destroyed the officer's computer.  Conduct that is in bad faith must be willful, but
> conduct that is willful need not rise to bad faith actions.  . . . While bad faith
> requires "destruction for the purpose of depriving the adversary of the evidence,"
> for willfulness, it is sufficient that the actor intended to destroy the evidence.

269 F.R.D. at 530 (internal citations omitted).  At a minimum, Plaintiff's conduct amounts to

willfulness by definition, as there is no dispute that it was "intentional, purposeful, or deliberate,"

id. – indeed, it was all three.  Beyond willfulness, however, the clear relevance of these four

deleted e-mail exchanges demonstrates bad faith, Plaintiff's protestations that he executed the

---

[1] If by his reference to an unspecified "plethora of corroborating evidence[,]" Plaintiff means to
suggest obliquely that he was not being truthful about his role at CRS and his ability "to focus
the debate from inside the legislative process[]" in his 2009 e-mails to Congressional staff
members, Executive Branch officials, and members of the detainee advocacy community, that
simply raises more of the same deep questions about Plaintiff's credibility.  In that event, he was
either lying then or is lying now in his representations to this Court and to the Court of Appeals.
Cf. Witness for the Prosecution (MGM Studios, released Feb. 6, 1958 (United States)) ("The
question is whether you were lying then or are you lying now . . .").

deletions consistent with his "business-as-usual" practice notwithstanding.   "When a person purposefully destroys evidence, it is reasonable to infer that he did so to keep it from being used against him.   That is the historical basis of the doctrine and the maxim that everything is construed against the spoliator."   D'Onofrio v. SFX Sports Group, No. 06-cv-687, 2010 WL 3324964, at *10 (D.D.C. Aug. 24, 2010).

Worth noting in this regard is Plaintiff's suggestion in the procedural history section of his opposition, Pl.'s Opp. Mem. at 3-4, that on appeal by former defendant Daniel Mulhollan, "[t]he dissent (Rogers, J.) did address the merits, concluding, as had this Court, that [Plaintiff] has alleged valid First Amendment and due process claims."[2]   Most noteworthy about that suggestion is Plaintiff's neglect to acknowledge that the dissent from the Court of Appeals panel majority based its conclusion in large part expressly on the complaint allegations, which it credited pursuant to Fed. R. Civ. P. 12(b)(6), that Plaintiff's role at CRS had nothing to with military commission or detainee issues.   Davis v. Billington, 681 F.3d 377, 399-400 (D.C. Cir. 2012) (Rogers, J., dissenting).   As the dissent wrote:

> But even if Davis can properly be viewed as a "policymaker," which he disputes, the court in [Hall v. Ford, 856 F.2d 255 (D.C. Cir. 1988)] was clear that the relation to the policymaker's work area is a "minimum" requirement to show government harm.   Davis's complaint states the Members of Congress were aware that the American Law Division, and not his division, was responsible for issues relating to military commissions, see Compl. ¶ 32.   Davis's name has not appeared on any reports to Congress about military commissions, and no congressional inquiries have been directed to him on that subject.   Id. ¶ 29.

Id. at 400 (internal citations omitted); see also id. at 400-01 (same as to Plaintiff's due process claim).   The specific deleted e-mails discussed in detail in the Government's opening brief and supra here put the lie to those allegations.   It is thus particularly brazen for Plaintiff to emphasize

---

[2] This assertion was meant to stand in contrast to Plaintiff's mention that the panel majority on appeal did not reach the merits of Plaintiff's claims in dismissing them as to Defendant Mulhollan, as it held that Plaintiff's Bivens claim against former Defendant Mulhollan was statutorily precluded.   Pl.'s Opp. Mem. at 3-4.

the dissent's conclusions on appeal (and those of this Court), largely based as they were on Plaintiff's knowing and material misrepresentations to both courts, while at the same time utterly failing to acknowledge the contradicting deleted e-mails discussed comprehensively in the Government's opening brief.

**The Timing of Plaintiff's Intentional Deletions.**   Second, the timing of Plaintiff's deliberate deletions constitutes further damning evidence of his culpability in executing those deletions.   It is undisputed that Plaintiff deleted approximately 3,400 files from his hard drive over a two-minute period on January 20, 2010 – twelve days after he had initiated this litigation. ECF No. 63-1 at 12.  It is likewise undisputed that Plaintiff deleted 134 additional files – most of them Microsoft Word or PDF files – between December 1, 2009, well after Plaintiff reasonably should have anticipated litigation, and January 19, 2010.  Id.  Plaintiff executed all of those deletions after his obligation to preserve documents had attached, see Victor Stanley, 269 F.R.D. at 521-22 – an obligation that certainly encompassed the greater duty to refrain from the deliberate deletion of material evidence.  D'Onofrio, 2010 WL 3324964, at *10.

Plaintiff spills considerable ink in an effort to portray his deliberate deletions as consistent with his alleged longstanding practice of "cleaning up" his computer upon departing a government position, see Pl.'s Opp. Mem. at 1, 5-6, but in doing so he never once even attempts to grapple with the fact that whatever his historical practice might have been in the absence of pending or anticipated litigation, his document preservation obligations immediately superseded such ordinary practice as soon as litigation appeared likely.  Victor Stanley, 269 F.R.D. at 521-22.  That is even more starkly the case here, where Plaintiff's all-encompassing deletions were admittedly intentional, rather than in the far more common scenario where a litigant inadvertently deletes or fails to preserve material evidence.  See, e.g., D'Onofrio, 2010 WL 3324964, at *10.  The fact that Plaintiff executed multiple deliberate purges of electronically

stored information well after the attachment of preservation obligations in and of itself suggests bad faith.  See Rimkus Consulting Group v. Cammarata, 688 F. Supp. 2d 598, 644 (S.D. Tex. 2010).   And the fact that Plaintiff completely fails even to acknowledge this superseding litigation-preservation obligation, despite extensive protestations that he was simply following "business-as-usual" in deleting thousands of government documents from their sole repository, suggests that he simply does not have any potentially exculpatory explanation for why he did so when litigation not only was imminent, but was in fact under way.

Here, it is fitting to highlight one particularly astounding instance of the audacity that Plaintiff demonstrates pervasively throughout his opposition brief.   Rather than confront the fundamental tension between (i) his asserted "business-as-usual" practice of deleting government materials from his work computer when transitioning out of a position and (ii) his superseding obligation to preserve material evidence when litigation has become apparent, Plaintiff opts for the strategy of blaming the Library for failing to issue a litigation hold to him prior to his initiation of this litigation.   See Pl.'s Opp. Mem. at 2, 11, 25.  Two deep flaws in this strategy leap out immediately.   To begin with, Plaintiff's attempt to shift the blame to the Library for his intentional, deliberate actions in deleting government materials after he had initiated this litigation is both illogical and unsupported by law.   In essence, Plaintiff is saying that the Government should have done a better job of making sure that he did not steal its files.  But at a bare minimum, any reasonable litigant is presumed to understand that he must refrain from the intentional deletion of material evidence the moment that he reasonably anticipates the likelihood of litigation, much less after he has in fact initiated litigation; that much is axiomatic.  Victor Stanley, 269 F.R.D. at 521-22.  That presumed understanding is also even more clear cut when that litigant is a licensed attorney with twenty-five years of experience as an Air Force Judge Advocate General, including many years as a criminal prosecutor, as Plaintiff is.  Simply stated,

it defies belief for Plaintiff to suggest that he did not know it was fundamentally wrong for him to intentionally delete the entire substance of his CRS government computer hard drive after he had initiated litigation against the Library challenging CRS's employment decisions.

Moreover, even if by some improbable series of career quirks Plaintiff had reasonably managed to accrue almost three decades of legal experience without developing the basic understanding that the intentional deletion of material evidence after he has initiated litigation against his former employer is impermissible, it would be incumbent upon his litigation counsel (rather than his erstwhile employer) to advise him, through the implementation of a litigation hold, that he should not do so.  See, e.g., Krumwiede v. Brighton Associates, No. 05-cv-3003, 2006 WL 1308629, *8 (N.D. Ill. May 8, 2006) (no requirement for opposing party to send formal request necessary for litigant's evidentiary preservation obligation to attach).  In any event, Plaintiff's misguided efforts to shift blame from himself to the Library for his own intentional misconduct in deleting the entire substantive contents of his government computer hard drive should not be entertained.

A final point in this regard: The underlying premise of the argument that Plaintiff does make – that his intentional deletion of the entire substance of his government hard drive and his removal of (allegedly) most of the deleted files on a personal thumb drive was simply his "business-as-usual" document disposition practice when leaving a government position – would be laughable if the consequences and ramifications were not so serious.  Plaintiff's suggestion that this allegedly customary practice is somehow legitimate is far-fetched.  Plaintiff would have this Court believe that he thought then, and believes now, that any federal employee (or any employee or litigant for that matter) is entitled to simply walk out the door with whatever electronic work files he can get ahold of, at least as long as he thinks the "official file" is being kept elsewhere.  In other words, Plaintiff asks the Court to conclude that government information

is essentially the personal property of the employees (and former employees) that had access to it by virtue of their job duties, or is some kind of fair game that can be poached at will.

That notion is not correct.  As explained in the Government's opening brief, the information that an employer pays its employee to generate, review, or maintain generally belongs to the employer, and cannot be taken from the employer without its permission.  Gov't Mem. at 19-21.  That is particularly the case where the employer is part of the United States Government, as is the case here.  Id. at 20-21.

Crucially, Plaintiff never responds to the basic assertion, set forth in the Government's opening brief, Gov't Mem. at 19-21, that the thousands of files he deleted from his government computer hard drive and removed on a personal thumb drive constitute government property that cannot be taken from the government absent its permission.  Rather, Plaintiff simply seeks to shift the focus.  He argues that his use of a personal thumb drive to remove thousands of files that he created, reviewed, or received as a senior-level CRS employee – on government time, at government expense, and in the discharge of government duties – is irrelevant to the charge of intentional spoliation.  Pl.'s Opp. Mem. at 24-25.  He audaciously questions the proposition that the Constitutional Speech-or-Debate privilege bars him, as a now-former Government employee, from disclosing to third parties the substance of confidential legislative materials to which he was made privy through the execution of his official duties as a CRS Assistant Director.  Id. at 23-24.  He even argues that he was reasonably unclear as to the scope of his record retention obligations under the Federal Records Act, criticizing the Library's implementation of the Act as contributing to his lack of clarity.  Id. at 18-20.  But the sum total of Plaintiff's response to the basic proposition that he unilaterally removed government materials to which he had no private right of ownership is a flippant qualifier – "Whatever the merits of that argument may be[,]" id.

at 24 – intended only to transition to Plaintiff's incorrect counter-proposition that it has nothing to with the charge of intentional spoliation.

In fact, Plaintiff himself appears to slip in attempting to keep up any suggestion that he himself fully believes the proposition that the deleted files do not constitute government property.   In footnote 11, Plaintiff states that "[t]o be clear, [Plaintiff] does not concede that <u>all</u> of the files on his computer were government property."  Pl.'s Opp. Mem. at 25, n.11 (emphasis added).  This reasonably could, and in fact should, be construed as a concession that some – as opposed to "all" – of the deleted files removed via his personal thumb drive in fact do constitute government property.  As a concession, that would not go far enough, but it is an appropriate starting point.  The acknowledgment that at least some files maintained on a government computer constitute "government property" ineluctably means that they do not belong to a former employee, and cannot be disposed of by that former employee in any manner he wishes.

Similarly, Plaintiff's qualification that his alleged customary departure practice did not involve taking classified documents is telling, as it underscores his recognition that some government information, at least, does have protection and cannot be taken.  <u>Id.</u> at 6.  To be sure, Plaintiff would have this Court believe that classification is the only statutory protection for government information of which he was aware throughout his long tenure with the Government. <u>See id.</u> at 6, 23-25.  But in doing so, Plaintiff improperly downplays the range of federal statutes protecting government information as well as the protections that the Speech-or-Debate Clause extends to legislative materials to which he was privy by virtue of his position at CRS.  <u>See</u> Gov't Mem. at 20-21.

Finally, Plaintiff's suggestion that his asserted "business-as-usual" departure practice is consistent with and supported by his experience in the Air Force, Pl.'s Opp. Mem. at 5-7, 15-16, is wholly absurd.  Whatever Plaintiff might have done when he transitioned from one office to

another in the Air Force does not in any way inform what he is required to do – or refrain from doing – when he is being separated from the Government altogether.  Not to mention, of course, what Plaintiff should do – or refrain from doing – when he has filed suit against his soon-to-be-former government employer.

The ramifications of Plaintiff's unpersuasive and ultimately unfathomable excuses for his willful conduct cannot be overstated, and the Court should neither countenance Plaintiff's admittedly willful behavior nor shrink from ensuring that other litigants receive the message that deleting and absconding with government information upon departure from government employment will not be tolerated or rewarded in any manner.

**Plaintiff's Decision to Leave a JPEG Image of the Bill of Rights as the Sole Remaining File on his Government Computer Hard Drive.**  Third, the sole surviving file on Plaintiff's government hard drive after he purged everything else to which he had user access on January 20, 2010 – and over the weeks leading up to that date, after the probability of litigation had become reasonably apparent to Plaintiff by any measure – was a JPEG image file of the Bill of Rights.  Gov't Mem. at 5-6.  Forensic analysis of the hard drive established that Plaintiff had downloaded that JPEG image file from the internet on January 7, 2010, just one day before filing this action asserting claims under the First and Fifth Amendments, and had used it as his computer's wallpaper during the first two weeks of the litigation.  ECF No. 63-3 at 4; ECF No. 63-4 at ¶ 17.  Plaintiff's decision to leave that single file behind – making it the only computer file remaining after his departure to memorialize his thirteen-month tenure at CRS – overwhelmingly suggests an intent to antagonize his former government employer (should it ultimately locate that file on the emptied hard drive).

Here too, though, Plaintiff fails to even acknowledge this fact in his opposition.  That omission is particularly striking given his thematic argument that his deliberate deletions of the

substance of his government hard drive, executed after he had initiated this litigation, were essentially just his "business-as-usual" upon departure from any given employment position – his well-intentioned efforts to "clean[] up his computer by deleting its contents, to prepare it for the next user."  Opp. Mem. at 1; see also id. at 5 ("[Plaintiff's] actions prior to his departure from CRS, with respect to the treatment of the documents and emails on his work computer, were consistent with his past practice throughout his lengthy career as a government employee. . . . When leaving a place of employment, [his] practice was to clean up his computer and to preserve an electronic copy of those files and emails that he thought he should keep.").  The professed "good" intentions ostensibly motivating Plaintiff's deliberate deletions of material evidence from his government hard drive (incredible as they are even viewed in isolation) do not dovetail with his decision to thumb his nose at the Library by leaving behind a JPEG image file of the constitutional provisions he alleges the Library violated in separating him from his former position.  If there was any arguably innocuous basis underlying Plaintiff's decision to leave the JPEG image behind as the sole remaining file on this government hard drive, it would be incumbent upon him to articulate it.  Yet Plaintiff has not made any attempt to do so.

Ultimately, Plaintiff's silence as to these critical points communicates more than his (unpersuasive) arguments in response to other points, addressed infra.  The record establishes that Plaintiff acted with intent and deliberation in deleting all but one of the files on his government computer hard drive to which he had user access.  The timing of his deletions, the substance of specific e-mails encompassed within the deletions, and the symbolic gesture of leaving behind only a single JPEG image of the Bill of Rights underscore the willfulness and bad faith underlying Plaintiff's deliberate conduct.

**B.** **PLAINTIFF'S ARGUMENTS THAT HIS ADMITTEDLY DELIBERATE CONDUCT DOES NOT CONSTITUTE SPOLIATION ARE UNPERSUASIVE.**

Plaintiff's argument that his willful, systemic deletions do not constitute spoliation because no documents were "destroyed," Pl.'s Opp. Mem. at 14-18, is unavailing.  Among other flaws, the premise of Plaintiff's argument – that his purposeful deletions did not "destroy" any documents – is incorrect or immaterial in at least three respects.

First, Plaintiff's deletions do in fact constitute destruction of documents.  Because of Plaintiff's actions, all that remains of the Government's original files are Plaintiff's electronic <u>duplicates</u> of <u>some</u> of these files, and the prospect of an expensive—and uncertain—forensic attempt to restore or reconstruct the originals.  If forensic recovery efforts fail, the Government's original files are gone for good.

Plaintiff rests his argument in response on the suggestion that he "preserved" duplicates of the original files he deleted from his government computer hard drive on the personal thumb drive he used to remove the duplicates from CRS.  But the flaws inherent in Plaintiff's so-called "preservation" approach are illustrated by facts disclosed since the filing of the Government's opening brief.  Although Plaintiff's counsel represented to the Government on October 19, 2012, that duplicates of all of the files Plaintiff had deleted from his government computer hard drive were maintained on his personal thumb drive, ECF No. 63-5 at 1 ("[W]e are providing you with a CD containing all of those files and emails[.]"), Plaintiff subsequently testified by declaration that he "now understand[s] that 86 of these documents were removed from the thumb drive at some point in time[,]" though he has no recollection "when or how that occurred," and that he was forced to recover them from a portable hard drive to which they were apparently backed up from the thumb drive.  ECF No. 68-2 at ¶ 27.  Thus, rather than maintaining all of the duplicates in the manner he initially represented to the Government, Plaintiff has already lost track of them, losing them at some indeterminate time from the medium he used to remove them from CRS and

allowing the only subsequently created copies of copies to commingle with "a lot of different files, from a multitude of different sources and contexts[]" on a portable hard drive, many of them personal documents.  ECF No. 68-2 at ¶ 24.  Plaintiff's cavalier attitude toward maintaining the integrity of the only existing duplicates of the government files he intentionally deleted is hardly reassuring.[3]

Second, Plaintiff's thematic characterization of the Government's position as asserting spoliation without actual destruction of evidence, Pl.'s Opp. Mem. at 1, 14, is ill-fitting. Plaintiff's effort to so characterize the Government's position, relying on D'Onofrio, fundamentally misapprehends both the context of the decision in D'Onofrio and the jurisprudence of willful spoliation writ large.  By stark contrast to this case, D'Onofrio involved no well-founded allegations of intentional conduct by the allegedly spoliating party.  2010 WL 3324964, at *9 ("[P]laintiff has not shown, by clear and convincing evidence, that defendants acted in bad faith, i.e., with a purposeful intent to destroy evidence.").  Against the backdrop of non-willful spoliation case law, the court simply concluded that it was premature to decide the question of monetary sanctions until further record development.  Id.

This case differs in fundamental ways: Plaintiff has acknowledged that he intentionally deleted thousands of government files from his hard drive after he initiated this litigation, and there is every indication that he did so in bad faith, given the high relevance of specific deleted materials to his claims, the timing of Plaintiff's actions, and Plaintiff's surrounding conduct.  See

---

[3] Notably, even today, after piecing together a set of copies from multiple devices, Plaintiff does not (and cannot) guarantee that he has located all copies.  Instead, he simply offers the "best of his knowledge and belief," ECF No. 68-2, at ¶ 28.  If Plaintiff lacks the courage of his convictions as to the comprehensiveness of his scrabbled-together collection of copies (and copies of copies) of the deleted government files, neither the Government nor the Court should possess any confidence that Plaintiff in fact duplicated all of the deleted files he says he duplicated, or that Plaintiff has securely maintained an appropriate chain of custody over the copies that he did make.

Part I.A, supra.  As the court noted in D'Onofrio in the context of willful – as opposed to negligent – spoliation, "[w]hen a person purposefully destroys evidence, it is reasonable to infer that he did so to keep it from being used against him.  That is the historical basis of the doctrine and the maxim that everything is construed against the spoliator."  Id. at 10.

That inference is certainly the takeaway from the larger body of willful spoliation jurisprudence, which Plaintiff fundamentally neglects in his effort to focus – however unpersuasively – on a putative lack of "destruction."  What Plaintiff frames as "destruction," or a putative lack thereof, is more correctly understood as prejudice or lack thereof, as even documents that are unquestionably "destroyed" by a spoliator may ultimately be recovered or reconstructed forensically (often at significant expense).  And even where material evidence is ultimately reconstructed, thereby lessening the moving party's prejudice at the end of the day, spoliation nonetheless still has occurred, and sanctions nonetheless may be warranted where the spoliating party acted with sufficient culpability.  As the court explained in Victor Stanley, "[t]he harshest sanctions may apply not only when both severe prejudice and bad faith are present, but also when . . . the prejudice is minimal but the culpability is great[.]"  269 F.R.D. at 533; but see id. ("Conversely, absence of either intentional conduct or significant prejudice may lessen the potential appropriate sanctions.").  Thus, courts have imposed severe sanctions in cases of willful spoliation despite the absence of severe prejudice, ranging from dismissal or default judgment, Krumwiede, 2006 WL 1308629, **7, 9, 11 (N.D. Ill. May 8, 2006) (entering default judgment based on clear and convincing evidence of willfullness and bad faith in deletion of thousands of potentially relevant files, despite possibility of forensic reconstruction), to substantial monetary sanctions, Victor Stanley, 269 F.R.D. at 540-41.

Third, even if Plaintiff is correct that his duplication of some of the deleted files onto his personal thumb drive constitutes a form of "preservation" – and he is not, as set forth supra – he

himself acknowledges that he did not so "preserve" a subset of the files he intentionally deleted, meaning that he unquestionably "destroyed" such documents through his deliberate, post-filing deletions.  In Plaintiff's own words, "[b]efore leaving [CRS], he made a digital copy of his documents and emails – except for those that had nothing to do with him or this lawsuit, such as evaluation forms for his subordinates – and cleaned up his computer by deleting the items on it, so that the next employee could use it."  Pl.'s Opp. Mem. at 5.  Plaintiff's categorical, conclusory assertion that documents such as subordinate evaluation forms he prepared during his tenure have "nothing to do with him or this lawsuit" – and therefore did not in his unilateral view warrant his self-help brand of litigation "preservation" – is incorrect.  As a former CRS Assistant Director, his evaluations of his subordinates in the FDT Division absolutely are at issue in this action.  See Def.'s Opp. to Pl.'s Mot. for TRO, Jan. 15, 2010 (ECF No. 6) at 10, 11-12.  As explained by then-CRS Director Daniel Mulhollan, at the time of Plaintiff's hiring in 2008:

> Compliance with Library and CRS standards on objectivity and non-partisanship had recently become a problem within FDT, including the failure of some FDT analysts to comply with regulations and policies governing outside speaking and writing and media interactions.  In that regard, Director Mulhollan emphasized that the new Assistant Director would be required to set the standard for compliance with applicable regulations and policy within FDT, and would likewise be required [to] enforce regulations and policy with staff members who failed to comport themselves accordingly.

ECF No. 6 at 10 (citing Declaration of Daniel M. Mulhollan, Jan. 15, 2010, at ¶ 23 (ECF No. 6-1)).  Thus, insofar as Plaintiff's duties involved ensuring compliance with CRS policies on outside speech, it follows that Plaintiff would be required to address such issues for potentially wayward FDT analysts through both the enforcement and employee evaluation processes.  See ECF No. 6-1, ¶¶ 23, 32.

In fact, those duties played out in just such a fashion at least once during Plaintiff's tenure as Assistant Director for FDT.  In February 2009, Plaintiff verbally counseled an FDT employee about the need to adhere to Library and CRS regulations and policies concerning

outside speaking and writing.  ECF No. 6 at 11; ECF No. 6-1 at ¶ 32. Subsequently, "in a June 2009 memorandum of admonishment to [that] FDT analyst, Plaintiff informed the employee that while he 'did not forfeit [his] First Amendment rights as a CRS employee,' he could not conduct himself in 'a manner that impairs, in fact or in perception, the high professional standards for objectivity which are essential to CRS."  ECF No. 6 at 11-12; ECF No. 6-1 at ¶ 33.

But as a larger matter, the determination of what is or is not relevant to a pending litigation is not a decision that Plaintiff is entitled to unilaterally make.  Rather, documents that have some bearing on his duties as a CRS Assistant Director, and his understanding and execution of those duties, fall precisely within the range of documents the relevance of which may remain an open question until litigation plays out.  For that category of documents at an absolute minimum – particularly those that belong to a litigant's employer in the first instance – it constitutes impermissible and potentially destructive self-help for a litigant to unilaterally and deliberately determine that deletion is an appropriate course, and that self-help evidentiary "preservation" is not necessary (no matter how haphazard such inadequate and improper "preservation" efforts are in the first instance).

## II.  REMEDIAL AND PUNITIVE SANCTIONS ARE WARRANTED ON THE BASIS OF BOTH PLAINTIFF'S CULPABILITY AND THE PREJUDICIAL EFFECTS OF HIS CONDUCT.

The uniquely egregious circumstances of this case warrant the fullest range of spoliation sanctions, including dismissal.  Plaintiff's opposition does not persuade otherwise.

### A.  PLAINTIFF'S WILLFUL CONDUCT WARRANTS DISMISSAL.

Plaintiff's opposition suggests only that dismissal is not warranted absent "extreme prejudice," and that Plaintiff's conduct was not sufficiently "flagrant and egregious" to warrant such a sanction here.  Pl.'s Opp. Mem. at 28-29.  Plaintiff is wrong.

Notwithstanding Plaintiff's protestations, his culpability is in fact great.  Plaintiff deleted virtually the entire substance of his hard drive after he had initiated this litigation, and did so

with intent and deliberation.  See Part I.A, supra.  Among the thousands of government files deleted by Plaintiff were multiple e-mails that directly contradict Plaintiff's factual representations to this Court and the Court of Appeals on the issue central to his theory of the case – the allegation that he did not have anything to do with military commission or detainee issues.  See Part I.A, supra.  The fact that Plaintiff intentionally deleted the very government files that would disprove his crucial factual misrepresentations to the Court – after he had already initiated this litigation and made those misrepresentations under oath, via signed pleading, and in open court – underscores that his conduct was sufficiently "flagrant and egregious," to use Plaintiff's own words, to warrant the most severe sanction as a punitive measure.

Even more importantly, though, this case is not like the broader range of spoliation cases.  At its largely undisputed factual core, this is a case in which Plaintiff acted with willful and deliberate calculation to delete files that belonged not to him, but to the Government, his opposing party in the litigation he had already initiated.  This case is thus analogous to a scenario in which a departing employee misuses his key card or other form of access to break into his opposing party's physical file room and destroys all the files he has thus accessed without authorization, meanwhile making copies of some of those files for his own use.

The fact that Plaintiff deleted (and stole) thousands of files that belonged not to him, but rather to his opposing party, increases both his culpability and the prejudice of his actions.  Even if a showing of prejudice is necessary, prejudice is self-evident here.  As noted in Part I.B, supra, certain government files may in fact be permanently lost.  But more fundamentally, Plaintiff has demonstrated a blatant disregard for the integrity of the judicial process and the statutory and constitutional protections to which many of the deleted and stolen government files may be subject.  Plaintiff's deliberate actions have exposed the Government to significant prejudice that cannot be undone: he has wrongfully possessed thousands of government files for the past three

years – files to which the rightful owner and custodian has been denied access – and has made his private litigation counsel and various other third parties privy to them, without authorization, to use them against their rightful owner and custodian.

On the basis of this largely undisputed factual record, a failure to impose the strongest sanction here would send a message to Plaintiff and to future employees contemplating litigation against their government employers that it is entirely permissible for such employees to delete government information relevant to their case, deny the Government access to such information, and steal that information on their way out the door.  The Court should decline Plaintiff's request to transmit such a message, and instead should impose the sanction of dismissal.

### B.   ALTERNATIVELY, PRECLUSION AND ADVERSE INFERENCE SANCTIONS ARE WARRANTED.

Alternatively, adverse inference and preclusion sanctions are warranted here for much the same reasons set forth in Part II.A, supra, and because Plaintiff's intentional destruction of original files and mishandling of copies – at least some of which bear on the issues in this case – has stained the evidentiary record.  The adverse inferences requested by the Government are:

- That Plaintiff's official responsibilities and duties as Assistant Director for FDT encompassed issues regarding detainees and military commissions;

- That the subject matter of Plaintiff's November 2009 opinion pieces were related to his official duties;

- That Plaintiff was obligated as a CRS Assistant Director to refrain from outside speech about detainee issues in a manner that would undermine CRS's mission to provide Congress non-partisan, unbiased, and objective analysis; and

- That Plaintiff's speech in the November 2009 opinion pieces undermined CRS's mission to provide Congress with non-partisan, unbiased, and objective analysis and thus caused harm to the organizational interests of CRS.

Gov't Mem. at 27.

In response, Plaintiff argues that the incomplete – and potentially corrupted – set of copies of destroyed originals he has pieced together bridges the evidentiary gap created by his

misconduct, and therefore no evidentiary sanction is appropriate.  This argument is flawed in at least two respects.  First, as Plaintiff now admits, not all of the documents the he intentionally deleted from his government computer hard drive were copied to the thumb drive, Pl.'s Opp. Mem. at 5, 9 n.2, and not all copies that were made were safely stored on the thumb drive, as at least eighty-six "disappeared" from the thumb drive at some unspecified point.  Pl.'s Opp. Mem. at 12-13; ECF No. 68-2, at ¶ 27.  Moreover, during the three years that these copies remained unlawfully in Plaintiff's possession, unbeknownst to the Library as their rightful owner and custodian, they were vulnerable to being corrupted, modified, or lost.  Plaintiff's unilateral misconduct created these evidentiary problems, and the adverse inference and preclusion sanctions are proper responses to his intentional actions.

Second, the intentional nature of Plaintiff's conduct gives rise to a presumption that the documents destroyed would be adverse to his lawsuit.  See Talavera v. Shah, 638 F.3d 303, 312 (D.C. Cir. 2011) (noting that the "non-accidental destruction of his notes supports an inference that the notes would have contained information favorable to [the adversary's] claim").  This presumption is confirmed by the fact that some of the recovered files directly refute Plaintiff's claim that he had no involvement with issues related to military commissions or detainee prosecutions during his employment.  See Gov't Mem. at 16-19.  Plaintiff's efforts to destroy and conceal evidence provide more than enough grounds to preclude Plaintiff from relying on such evidence, and to infer that the evidence would be unfavorable to Plaintiff.

### C.    MONETARY SANCTIONS ARE WARRANTED.

The same reasons supporting the imposition of dismissal, adverse inference, or preclusion sanctions support the imposition of monetary sanctions against Plaintiff as well.  Plaintiff's opposition makes clear in relevant part that his improper so-called evidentiary "preservation" measures are, at a minimum, of highly doubtful comprehensiveness or efficacy.  Thus, the

Government must be permitted to conduct a comprehensive forensic analysis and reconstruction of Plaintiff's deleted hard drive and, at a minimum, the personal thumb drive that Plaintiff improperly used to transfer an unspecified volume of copied files out of CRS.   Because Plaintiff's willful deletions constitute the basis for this partial remedy, Plaintiff must bear the full cost of that forensic analysis and reconstruction on the basis of his culpability.   <u>See</u> Part I.A, <u>supra</u>.   The ultimate total of those fees, expenses, and costs remains to be determined, in large part on the basis of what further efforts must be undertaken.   An award thus should be entered with the full amount to be determined at the conclusion of the reasonably necessary forensic investigation and reconstruction process.

## <u>CONCLUSION</u>

For the reasons set forth herein and in the Government's opening brief, the Government's Motion to Sanctions should be granted, and appropriate sanctions should be entered against Plaintiff for the intentional spoliation of material evidence.