**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                                      )
MORRIS D. DAVIS,                                      )
                                                      )
                    Plaintiff,                        )
                                                      )
          v.                                          )          Civil Action No. 10-0036 (RBW)
                                                      )
JAMES H. BILLINGTON, in his official                  )
capacity as the Librarian of Congress,                )
                                                      )
                    Defendant.                        )
_____ )

**MEMORANDUM OPINION**

Currently before the Court is the Plaintiff's Motion for a Temporary Restraining Order

and a Preliminary Injunction ("Mot."). The plaintiff seeks instatement into a "recently

advertised position within the Congressional Research Service," id. at 1, i.e., the "Deputy

Assistant Director of the Congressional Research Service's Foreign Affairs, Defense and Trade

Division,"[1] id. at 4. The plaintiff describes the position as being "reasonably comparable to the

[Assistant Director of the Congressional Research Service's Foreign Affairs, Defense and Trade

Division] position from which he was unlawfully discharged." Id. at 1, 3. Alternatively, the

plaintiff requests that the Court temporarily enjoin the defendant "from filling this currently-

available position, which would potentially eliminate the only real relief available to [the]

[p]laintiff in this action." Id. at 1. After careful consideration of the parties' submissions,[2] as

_____

[1] Although the plaintiff represents that he is seeking reinstatement as an employee of the Congressional Research Service, it is not for the same position he previously held. Thus, the plaintiff's motion is better construed as one for instatement into a new position within the Congressional Research Service.

[2] In addition to the plaintiff's motion, the Court also considered the following submissions in rendering its decision: (1) the Notice of Errata Regarding [the] Plaintiff's Motion for a Temporary Restraining Order and a Preliminary Injunction ("Errata"); (2) the Defendant's Opposition to [the] Plaintiff's Motion for a Temporary Restraining Order

(continued . . . )

well as the parties' oral arguments at the December 11, 2014 hearing on the plaintiff's motion,

the Court concludes that it cannot award the plaintiff the extraordinary forms of relief he desires,

and thus the plaintiff's motion must be denied.

## I.    BACKGROUND

The Court need not rehash the factual background in much detail, as it has been set forth

in various opinions by both this Court and the District of Columbia Circuit.  See generally Davis

v. Billington, 775 F. Supp. 2d 23, 26-29 (D.D.C. 2011) (providing factual background), vacated

and remanded, 681 F.3d 377, 379-80 (D.C. Cir. 2012) (same); see also Davis v. Billington, _ F.

Supp. 2d _, _, 2014 WL 2882679, at *1-2 (D.D.C. June 25, 2014) (same).  In brief, the plaintiff

filed suit against the defendant, alleging that the defendant violated his First Amendment rights,[3]

by terminating him as the Assistant Director of the Congressional Research Service's Foreign

Affairs, Defense and Trade Division ("Assistant Director") for permitting the Wall Street Journal

and the Washington Post to publish opinion pieces that he authored, wherein he criticized the

Obama administration's prosecution of Guantanamo Bay detainees.  See Davis, 681 F.3d at 379-

80; Davis, _ F. Supp. 2d at _, 2014 WL 2882679, at *2, *10.  Upon filing suit, the plaintiff

sought a "preliminary injunction to prevent the Congressional Research Service, a service unit of

the Library of Congress, from terminating his employment."  Order at 1, Davis v. Billington, No.

10-cv-36 (D.D.C. Jan. 20, 2010), ECF No. 11 ("Order").  In considering the motion for

---

(. . . continued)
and a Preliminary Injunction ("Opp'n"); and (3) the Plaintiff's Reply in Support of His Motion for a Temporary
Restraining Order and a Preliminary Injunction ("Reply").

[3]  In an earlier Memorandum Opinion, the Court dismissed the plaintiff's case against another defendant.  See Davis,
_ F. Supp. 2d at _, 2014 WL 2882679, at *1.  In that same opinion, the Court also dismissed the plaintiff's Fifth
Amendment claim against the remaining defendant.  See id. at *16-17.

preliminary injunctive relief,[4] the Court found that "the plaintiff ha[d] established, at least based on the record before the Court at th[at] time, that the likelihood of success on the merits and public policy prongs of the preliminary injunction standard weigh[ed] in [the plaintiff's] favor," id. at 2, and that "the balance of harms factor . . . seem[ed] to be in equipoise," id. at 3. Nevertheless, the Court ultimately denied the plaintiff's motion on the ground that he had not demonstrated any irreparable harm.  See id. at 5-8.  Most recently, the parties filed cross-motions for summary judgment on the plaintiff's First Amendment claims against the defendant.  Davis, _ F. Supp. 2d at _, 2014 WL 2882679, at *10.  With a more developed factual record than was available to the Court at the time it denied the plaintiff's first motion for preliminary injunctive relief, the Court denied both parties' summary judgment motions, concluding that there were a myriad of factual disputes which precluded the Court from granting summary judgment to either party.  See id. at *10-16.  Further, the Court determined that should the plaintiff prevail on his First Amendment claims, he would be entitled to neither back pay nor front pay.  Id. at *6-8. The Court, however, left open the possibility that reinstatement into the plaintiff's former position could be an appropriate form of relief.  Id. at *8-10.

Against the background just described, the plaintiff has again requested that the Court award him preliminary injunctive relief that would require the defendant to reemploy him.  Mot. at 1.  And as already noted, this time, the plaintiff seeks either instatement into the vacant position of the Deputy Assistant Director of the Congressional Research Service's Foreign Affairs, Defense and Trade Division ("Deputy Assistant"), or alternatively, that the Court prohibit the defendant from filling this vacancy until this litigation is completed.  Id. at 1, 4.  The defendant opposes both requests.  See Opp'n at 4.

---

[4]  The familiar four-factor test for determining whether preliminary injunctive relief is appropriate is set forth below.

## II.   LEGAL ANALYSIS

### A.  Legal Standard

A preliminary injunction is "an extraordinary remedy that should be granted only when the party seeking the relief, by a clear showing, carries the burden of persuasion." Chaplaincy of Full Gospel Churches v. England, 454 F.3d 290, 297 (D.C. Cir. 2006) (internal quotation marks and citation omitted).  "The power to issue a preliminary injunction, especially a mandatory one, should be sparingly exercised." Dorfmann v. Boozer, 414 F.2d 1168, 1173 (D.C. Cir. 1969) (internal quotation marks omitted).  "To warrant preliminary injunctive relief, the moving party must show (1) a substantial likelihood of success on the merits, (2) that it would suffer irreparable injury if the injunction were not granted, (3) that an injunction would not substantially injure other interested parties, and (4) that the public interest would be furthered by the injunction." Chaplaincy, 454 F.3d at 297.

The District of Columbia Circuit has applied a "sliding-scale approach" in evaluating the preliminary injunction factors.[5] See, e.g., Sherley v. Sebelius, 644 F.3d 388, 392-93 (D.C. Cir. 2011).  Under this analysis,

> [i]f the movant makes an unusually strong showing on one of the factors, then it does not necessarily have to make as strong a showing on another factor.  For example, if the movant makes a very strong showing of irreparable harm and there is no substantial harm to the non-movant, then a correspondingly lower standard can be applied for likelihood of success.  Alternatively, if substantial harm to the nonmovant is very high and the showing of irreparable harm to the

---

[5] Several members of the Circuit have read Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7 (2008), to cast doubt on the continued validity of the sliding-scale approach.  See Davis, 571 F.3d at 1296 (Kavanaugh, J, joined by Henderson, J., concurring) ("[U]nder the Supreme Court's precedents, a movant cannot obtain a preliminary injunction without showing both a likelihood of success and a likelihood of irreparable harm, among other things." (emphasis in original)); see also Sherley, 644 F.3d at 393 ("Like our colleagues, we read Winter at least to suggest if not to hold 'that a likelihood of success is an independent, free-standing requirement for a preliminary injunction.'" (quoting Davis, 571 F.3d at 1296 (Kavanaugh, J., concurring))).  But the Circuit has had no occasion to decide this question because it has not yet encountered a post-Winter case where a preliminary injunction motion survived the less rigorous sliding-scale analysis.  See id. at 393 ("We need not wade into this circuit split today because, as in Davis, . . . in this case a preliminary injunction is not appropriate even under the less demanding sliding-scale analysis.").  Thus, because it remains the law of this Circuit, the Court must employ the sliding-scale analysis here.

movant very low, the movant must demonstrate a much greater likelihood of success.  It is in this sense that all four factors must be balanced against each other.

Davis v. Pension Benefit Guar. Corp., 571 F.3d 1288, 1291-92 (D.C. Cir. 2009) (internal quotation marks and citations omitted).

### B.  Analysis

### 1.  Substantial Likelihood of Success on the Merits

The plaintiff incorporates by reference previous arguments the Court has already considered regarding the merits of the plaintiff's remaining First Amendment claims.  See Mot. at 5.  Specifically, the plaintiff argues that because the Court found in favor of the plaintiff on this factor when considering the plaintiff's first motion for a preliminary injunction, and because these First Amendment claims survived the defendant's motion for summary judgment, the plaintiff has demonstrated a substantial likelihood of success on the merits.  See id.  Ignoring whether such a simplistic argument is even sufficient for the plaintiff to meet the burden of persuasion on this factor, the Court does not agree that its prior rulings in this case compel it to now conclude that the plaintiff has a substantial likelihood of success with respect to the First Amendment claims.

"Because a preliminary injunction is an extraordinary and drastic remedy, . . . the [party] seeking to invoke such stringent relief is obliged to establish a clear and compelling legal right thereto based upon undisputed facts."  In re Navy Chaplaincy, 928 F. Supp. 2d 26, 36 (D.D.C.) (internal citations and quotation marks omitted), aff'd, 738 F.3d 425 (D.C. Cir. 2013).  "If the record presents a number of disputes regarding the inferences that must be drawn from the facts in the record, the [C]ourt cannot conclude that [the] plaintiff has demonstrated a substantial likelihood of success on the merits."  Id. (internal quotation marks omitted) (citing cases); see

also Bancoult v. McNamara, 227 F. Supp. 2d 144, 152 (D.D.C. 2002) (denying preliminary injunction where "the parties hotly dispute[d] certain basic points"); Tarpley v. Laird, No. 1300-cv-72, 1972 WL 212, at *1 (D.D.C. Sept. 25, 1972) (denying preliminary injunction where "the record is ambiguous at best").

Here, in considering the parties' cross-motions for summary judgment on the plaintiff's First Amendment claims, the Court found that many outstanding factual disputes existed, and thus denied both parties' motions. Davis, _ F. Supp. 2d at _, 2014 WL 2882679, at *10-16. With factual disputes yet to be tested and potentially resolved on further motions for summary judgment following the completion of discovery,[6] or at trial, it follows that the plaintiff, at best, has an equal chance of succeeding as he does losing on his First Amendment claims. This falls well short of demonstrating a substantial likelihood of success on the merits. See In re Navy Chaplaincy, 928 F. Supp. 2d at 36. Accordingly, the Court finds that this factor does not weigh in favor of the plaintiff.

## 2.   Irreparable Harm

The plaintiff contends that the Court's failure to award preliminary injunctive relief will cause him to "experience[] irreparable financial harm each day." Mot. at 6. The crux of the plaintiff's contention is that because the Court has ruled that monetary relief—back pay and front pay—is unavailable to him in this case, that inability to ever recover the lost income alone compels a finding that he is being irreparably harmed. See id. at 6-7, 9-10. Under the circumstances of this case, the Court cannot subscribe to that logic.

There is a "high standard for irreparable injury." Chaplaincy, 454 F.3d at 297. Any alleged irreparable harm "must be both certain and great; it must be actual and not theoretical,"

---

[6] According to the Scheduling Order in this case, the parties should be conducting discovery. However, the plaintiff represented at the hearing—and the defendant did not state otherwise—that no discovery has taken place.

and be "of such <u>imminence</u> that there is a clear and present need for equitable relief."  <u>Id.</u>

(emphasis in original) (internal quotation marks omitted).  Moreover, "the injury must be beyond

remediation."  <u>Id.</u>  And courts have consistently held that irreparable harm is not established by

proving merely economic loss, <u>see, e.g.</u>, <u>Wisc. Gas. Co. v. FERC</u>, 758 F.2d 669, 674 (D.C. Cir.

1985), or loss of employment, <u>see, e.g.</u>, <u>Farris v. Rice</u>, 453 F. Supp. 2d 76, 79 (D.D.C. 2006);

<u>Veitch v. Danzig</u>, 135 F. Supp. 2d 32, 36-37 (D.D.C. 2001) (finding no irreparable harm where

alleged harm was "loss of salary and benefits, as well as damage to . . . professional reputation,"

as those types of harm are "typical in instances of the termination of any government

employee"); <u>Nichols v. Agency for Int'l Dev.</u>, 18 F. Supp. 2d 1, 5 (D.D.C. 1998) ("Merely

asserting that one will lose his or her job and its attendant salary, without more, cannot possibly

provide a sufficient basis for injunctive relief.").  There may, however, be such a showing where

"the circumstances surrounding an employee's discharge, together with the resultant effect on

the employee, may so far depart from the normal situation that irreparable injury might be

found."  <u>Sampson v. Murray</u>, 415 U.S. 61, 92 n.68 (1974).  These "extraordinary cases are hard

to define in advance of their occurrence."  <u>Id.</u>

    The plaintiff fails to meet this high standard as he has no concrete proof that the vacancy

for Deputy Assistant or some other comparable position will not be available when this matter is

ultimately resolved.  <u>See</u> Mot. at 6 (arguing that irreparable harm flows from the "<u>possibility</u> that

[the Congressional Research Service] will fill the [Deputy Assistant] position" (emphasis

added)).  And the plaintiff's alleged constitutional injury is not "beyond remediation" without

injunctive relief because even if the vacancy for Deputy Assistant is filled before this case

concludes, the Court still has the equitable power to reinstate the plaintiff into the Assistant

Director position, or a comparable position assuming one is available, if he prevails on the

merits.  See Davis, _ F. Supp. 2d at _, 2014 WL 2882679, at *9 ("[T]he Court has not yet

foreclosed the possibility of reinstatement.").[7]

      Further, the Court is mindful that there is case authority suggesting that the lack of ability

to recover back pay can amount to irreparable harm.  See Rosario-Urdaz v. Rivera-Hernandez,

350 F.3d 219, 222 (1st Cir. 2003) ("The unavailability of back pay or other monetary damages

against either the Commonwealth or the defendants in their official capacities goes a long way

toward establishing irreparable injury.  It is nose-on-the-face plain that the plaintiff will lose

wages while she is contesting her ouster.  Where a plaintiff stands to suffer a substantial injury

that cannot adequately be compensated by an end-of-case award of money damages, irreparable

harm exists."); Am. Fed'n of Gov't Emps., AFL-CIO v. United States, 104 F. Supp. 2d 58, 76

(D.D.C. 2000) (finding that preclusion of back pay supported irreparable harm argument).  But

the specific circumstances of this case require a different outcome, notwithstanding the Court's

ruling that the plaintiff cannot recover back pay.[8]

      The Court is not unsympathetic to the fact that the plaintiff may never recover the loss of

income associated with his allegedly unlawful termination, which are not insignificant.  See Mot.

at 6.  Aside from simply calculating and estimating his loss of income since the alleged unlawful

termination, however, the plaintiff has not once even hinted that he has fallen victim to any

financial distress.  See Sampson, 415 U.S. at 90 ("Mere injuries, however substantial, in terms of

money, time and energy necessarily expended in the absence of a stay, are not enough." (internal

quotation marks omitted)); Lee v. Christian Coal. of Am., Inc., 160 F. Supp. 2d 14, 31 (D.D.C.

---

[7]  Admittedly, the Court would have to scrutinize whether ordering the defendant to reemploy the plaintiff would adversely impact the mission of the Congressional Research Service.  But that does not necessarily lead to the conclusion that reemployment may not be required.

[8]  Even if the Court agreed with the plaintiff that lack of monetary relief requires a finding of irreparable harm, the other three factors counsel against the granting of preliminary injunctive relief.

2001) ("[W]hile an employer's discharge or constructive discharge of an employee will rarely

constitute irreparable harm, courts routinely make exceptions when an employee is so poor that

if she stopped working, the consequences would be severe."); Callicotte v. Carlucci, 698 F.

Supp. 944, 950 (D.D.C. 1988) ("In personnel discharge actions, the 'requisite irreparable harm is

not established . . . by financial distress or inability to find other employment, unless truly

extraordinary circumstances are shown.'" (quoting Holt v. Cont'l Grp., Inc., 708 F.2d 87, 90-91

(2d Cir. 1983) (ellipses in original)).   The plaintiff is currently a law school professor earning a

salary of approximately $73,000,[9] see Mot., Exhibit ("Ex.") A (Declaration of Morris D. Davis

("Davis Decl.")) ¶ 21, in addition to receiving an annual military pension of approximately

$72,000, see Opp'n at 19 & n.5.   Thus, in total, the plaintiff receives approximately $145,000 per

year from these two sources.[10]   The Court is, therefore, hard pressed to conclude that absent

preliminary injunctive relief, the plaintiff is experiencing, and will continue to experience,

irreparable financial harm during the pendency of this action with income of this magnitude.[11]

---

[9]   The plaintiff asserts that since the allegedly unlawful termination, the plaintiff "has been unable to find comparable employment" and "believes" that prospective employers view the plaintiff as "damaged goods."  Mot. at 6.  This speculative assertion is belied by the fact that the plaintiff is currently a law school professor, notwithstanding the events that gave rise to this case.

[10]   The plaintiff's financial circumstances critically distinguish this case from the cases cited by the plaintiff. Notably, the Court found that the plaintiff failed to establish irreparable harm in response to his first motion for preliminary injunctive relief, in part, because he was an individual who the Court thought could find gainful employment, even in light of his termination from the Congressional Research Service.  See Order at 7-8.  Now that the plaintiff has found substitute employment—as the Court correctly presumed—his claim of irreparable harm has only become more tenuous.

[11]   It bears mention that nearly six months have elapsed between the Court's decision precluding monetary relief for the plaintiff in this matter and the filing of the plaintiff's current motion.  See Davis, _ F. Supp. 2d at _, 2014 WL 2882679, at *17 (issuing opinion on June 25, 2014); Mot. at 10 (filing second motion for preliminary injunctive relief on December 2, 2014).  Were the absence of back pay so crippling to the plaintiff as to constitute irreparable harm, presumably the plaintiff would not have waited so long to seek preliminary injunctive relief from the Court. See Fund for Animals v. Frizzell, 530 F.2d 982, 987 (D.C. Cir. 1975) (reasoning that the decision to deny preliminary injunction was "bolstered by the delay . . . in seeking one" and finding delay of forty-four days "inexcusable"); Air Transp. Ass'n of Am., Inc. v. Exp.-Imp. Bank of the United States, 840 F. Supp. 2d 327, 340 (D.D.C. 2012) (finding preliminary injunctive relief inappropriate where there was a measure of "inaction" and where the alleged harm was "economic and speculative [in] nature"); Newdow v. Bush, 355 F. Supp. 2d 265, 292 (D.D.C. 2005) ("[U]nexcused delay in seeking extraordinary injunctive relief may be grounds for denial because

(continued . . . )

### 3.   Balance of Equities

In considering the plaintiff's first motion for preliminary injunctive relief, the Court

determined that the balance of harms was in "equipoise."  Order at 3.  The Court reasoned that

the mission of the Congressional Research Service could be "compromised" if the plaintiff

remained in his position, as his working relationship with his immediate supervisor had become

"fractured."  Id.  The plaintiff now insists this factor has tipped in his favor because his then-

immediate supervisor "is no longer employed at [the Congressional Research Service]."  Mot. at

4, see also id. at 6.  The Court disagrees.

First, as the plaintiff apparently acknowledges, there is a possibility that "some at [the

Congressional Research Service] may be wary of welcoming [the plaintiff] back."  Id. at 7.

Thus, to some degree, some friction may still arise if the plaintiff were to return to work at the

Congressional Research Service.  See Opp'n at 30-31 (documenting potential difficulty in

fostering collaborative atmosphere were the plaintiff to be instated into role of Deputy

Assistant).[12]  Second, because the government generally enjoys "wide[] latitude" in handling

personnel matters, Sampson, 415 U.S. at 83, see also id. (recognizing the "obviously disruptive

effect" of reinstating an employee), the Court is reluctant to intrude on the Congressional

---

(. . . continued)
such delay implies a lack of urgency and irreparable harm[.]"); Mylan Pharm., Inc. v. Shalala, 81 F. Supp. 2d 30, 44
(D.D.C. 2000) (finding delay of two months "militates against a finding of irreparable harm").  While the Court
appreciates that the plaintiff is seeking instatement into a position that recently became available, he could have
sought reinstatement into the position of Assistant Director earlier this year if his financial situation warranted
immediate action.  But he did not.

[12]  Neither Watts v. Alfred, 794 F. Supp. 431 (D.D.C. 1992), nor Johnson v. Bergland, 586 F.2d 993 (4th Cir. 1978),
cases cited by the plaintiff during the hearing, compels a different outcome.  In Watts, inter alia, there was no
evidence that the defendant's day-to-day operations would be impaired if the plaintiff were to be reinstated.  See 794
F. Supp. at 433-34.  Here, such evidence exists in the record.  See Opp'n at 30-31 (citing the Assistant Director of
the American Law Division at the Congressional Research Service).  And in Johnson, the Fourth Circuit found, in
conclusory fashion, that the plaintiff "would have no means of being reinstated if he should prevail at trial."  586
F.2d at 995.  But at this juncture, the Court is not prepared to find that such relief will not be made available in this
case.  See Davis, _ F. Supp. 2d at _, 2014 WL 2882679, at *9 (stating that "the Court has not yet foreclosed the
possibility of reinstatement").

Research Service's prerogative of hiring an employee it concludes is best qualified to fill the Deputy Assistant position,[13] see Farris, 453 F. Supp. 2d at 81 ("Suffice it to say that the court considers compelling and insurmountable the institutional harm attendant to judicial interference with federal personnel actions."); Nichols, 18 F. Supp. 2d at 6 ("[T]he federal government would be paralyzed from taking necessary personnel action every time an employee believed that his or her termination or involuntary separation was animated by discriminatory or retaliatory animus.").  Third, as explained above, the plaintiff currently has considerable annual income, notwithstanding his separation from the Congressional Research Service.  And fourth, the requested injunctive relief would disrupt the status quo.  Unlike the injunctive relief requested by the plaintiff in his first motion, where he sought to prevent the Congressional Research Service from removing him from his then-position of Assistant Director, the plaintiff now seeks to be placed into a different position at the Congressional Research Service—Deputy Assistant.  Thus, rather than preserving the status quo, such relief here would create a new status quo to the potential detriment of the defendant, see Elite Entm't, Inc. v. Reshammiya, No. 08-cv-0641(RMU), 2008 WL 9356287, at *4 (D.D.C. Apr. 18, 2008) (finding that the mandatory nature of the injunctive relief, which sought to change the status quo, was "a relevant fact bearing on the equities of the case").  Therefore, with the record now before the Court, the balance of equities swings in favor of the defendant.

---

[13] As noted by the defendant, if the Court were to enjoin the defendant from filling the position of Deputy Assistant, it would, inter alia, stymie the ability of the Congressional Research Service to service Congress.  See Opp'n at 32-33.  Moreover, the preliminary relief sought by the plaintiff is particularly inappropriate where it would not ameliorate the alleged financial harm that he is currently experiencing.  See Mot. at 6.  Were the Court to satisfy the plaintiff's desire to keep the vacancy open, the plaintiff would still not receive any immediate monetary relief.  See, e.g., Sierra Club v. U.S. Dep't of Energy, 825 F. Supp. 2d 142, 150-51 (D.D.C. 2011) (denying preliminary injunction where alleged harm would not be redressed by relief sought).

### 4.  Public Interest

The plaintiff contends that a preliminary injunction would serve the public interest because it would "uphold[] constitutional values and ensur[e] that those who are unlawfully discharged retain both marketability and the possibility of ultimate relief."  Mot. at 8.  The Court does not entirely accept the plaintiff's proposition.  Although a preliminary injunction would ensure that the First Amendment rights of federal government employees are not unnecessarily restricted, see Order at 3, it could also create an undesirable work environment, where none now exists, that would interfere with, rather than advance the important mission of the Congressional Research Service to provide services to Congress, see Opp'n at 31 (explaining that defendant's presence would hinder a "collaborative atmosphere among senior management" at the Congressional Research Service (citation omitted)); cf. Katz v. Georgetown Univ., No. 00-cv-2412, 2000 WL 33539394, at *7 (D.D.C. Nov. 6, 2000), aff'd, 246 F.3d 685 (D.C. Cir. 2001) ("As a matter of public policy, courts prefer to avoid the friction that would be caused by compelling an employer to hire or retain someone against their wishes.").

The Court also fails to see how a preliminary injunction is necessary to "retain . . . the possibility of ultimate relief."  Mot. at 8.  As the Court previously determined, if the plaintiff is successful, he could be entitled to reinstatement to his previous position at the Congressional Research Service as Assistant Director.  See Davis, _ F. Supp. 2d at _, 2014 WL 2882679, at *9. This possibility remains even if the newly-advertised position of Deputy Assistant is filled by an applicant other than the plaintiff.

Finally, while the plaintiff may in fact be qualified for the position of Deputy Assistant, there is a distinct possibility that someone who has applied, or will apply, for the position is either more qualified or a better fit for the position.  See Opp'n at 24-25.  Were the Court to

prevent the Congressional Research Service from offering the position to such an applicant, this result would undermine the public interest in having the Congressional Research Service hire an applicant who can best advance its mission of servicing Congress.  The public interest factor, therefore, does not weigh in favor of the plaintiff.[14]

### III.   CONCLUSION

For the foregoing reasons, the Court concludes that the plaintiff's motion for a preliminary injunction must be denied.[15]  This result is required because the plaintiff has failed to demonstrate that any of the four factors the Court must consider weigh in his favor.  The plaintiff has thus failed to carry his burden of establishing that he is entitled to the extraordinary remedy of a preliminary injunction.[16]

**SO ORDERED** this 19th day of December 2014.


REGGIE B. WALTON
United States District Judge

---

[14]  Notably, the plaintiff is effectively asking the Court to grant him relief that he may be entitled to if this case is resolved in his favor.  But the Court is unwilling to do that at this time, as discovery is ongoing and the evidentiary record is yet to be fully developed.  See Burns v. U.S. Gen. Accounting Office Emps. Fed. Credit Union, No. 88-cv-3424, 1988 WL 134925, at *2 (D.D.C. Dec. 2, 1988).

[15]  Another member of this Court has found that in cases where, as here, "a party seeks mandatory preliminary relief that goes well beyond maintaining the status quo" during litigation, the party is held to a higher burden of proof. Columbia Hosp. for Women Found., Inc. v. Bank of Tokyo-Mitsubishi Ltd., 15 F. Supp. 2d 1, 4 (D.D.C. 1997) (internal quotation marks omitted) (quoting Stanley v. Univ. of S. Cal., 13 F.3d 1313, 1319 (9th Cir. 1994)), aff'd, 159 F.3d 636 (D.C. Cir. 1998).  In other words, "where an injunction is mandatory—that is, where its terms would alter, rather than preserve, the status quo by commanding some positive act—the moving party must meet a higher standard than in the ordinary case by showing clearly that he or she is entitled to relief or that extreme or very serious damage will result from the denial of the injunction."  Id. (internal quotation marks omitted) (emphasis added).  Although it appears to the Court that this higher burden is consistent with the District of Columbia Circuit's admonition that "[t]he power to issue a preliminary injunction, especially a mandatory one, should be sparingly exercised," Dorfmann, 414 F.2d at 1173, the standard has yet to be adopted—or rejected—by the Circuit, see Allina Health Servs. v. Sebelius, 756 F. Supp. 2d 61, 69-70 & n.5 (D.D.C. 2010); Sataki v. Broad. Bd. of Governors, 733 F. Supp. 2d 22, 45 n.23 (D.D.C. 2010).  The Court need not weigh in on the issue, because even if the Circuit were to decide that a higher burden is not applicable when mandatory relief is being sought, the plaintiff has failed to satisfy the standard otherwise applicable for entitlement to preliminary injunctive relief.

[16]  The Court has contemporaneously issued an Order consistent with this Memorandum Opinion.